**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Winters*, **Slip Opinion No. 2021-Ohio-2753.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2753

DISCIPLINARY COUNSEL *v*. WINTERS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Winters*, Slip Opinion No. 2021-Ohio-2753.]**

*Attorneys—Misconduct—Violations of the Code of Judicial Conduct—Multiple violations arising from ex parte communications using social media— Conditionally stayed six-month suspension.*

(No. 2021-0442—Submitted May 12, 2021—Decided August 17, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-053.

_____

**Per Curiam.**

{¶ 1} Respondent, Bruce Alan Winters, of Port Clinton, Ohio, Attorney Registration No. 0039779, was admitted to the practice of law in Ohio in 1988. He was elected as the sole judge of the Ottawa County Court of Common Pleas General and Domestic Relations Divisions in 2008.  He was reelected in 2014 and 2020.

{¶ 2} In a September 2020 complaint, relator, disciplinary counsel, charged Winters with multiple violations of the Code of Judicial Conduct arising from his ex parte communications with Keith Blumensaadt regarding multiple cases that were pending before him in the Ottawa County Court of Common Pleas. Winters waived the right to a probable-cause hearing, and the case was assigned to a three-member hearing panel of the Board of Professional Conduct.

{¶ 3} The parties submitted extensive stipulations in which Winters admitted that he had committed all of the alleged misconduct; he also agreed to the aggravating and mitigating factors and recommended sanction of a conditionally stayed six-month suspension. Based on the stipulations, the parties' 33 stipulated exhibits, and Winters's hearing testimony, the panel made findings of fact and misconduct and agreed with the parties' recommended sanction with two revisions—it removed the condition that the continuing-education sanction be in addition to what Winters is already required to complete under Gov.Jud.R. IV, and it recommended that Winters pay the costs of these proceedings. The board adopted the panel's report in its entirety. Based on our review of the record, we adopt the board's findings of misconduct and recommended sanction, with the added condition that Winters must complete the continuing-education sanction in addition to what is already required by Gov.Jud.R. IV.

## I. FACTS AND MISCONDUCT

### A. Winters's Relationship with Blumensaadt

{¶ 4} Before Winters was admitted to the practice of law, he worked as a probation officer for the Ottawa County Juvenile Court, and he served as Blumensaadt's probation officer in the early 1980s. Winters testified that he had minimal contact with Blumensaadt for the 30-year period between serving as his probation officer and presiding over his criminal case as a common pleas court judge.

{¶ 5} In June 2016, Winters issued civil stalking protection orders ("CSPOs") that required Blumensaadt to stay at least 500 feet away from his brother, Todd Blumensaadt Sr., and his nephew, Todd Blumensaadt Jr., both of whom resided on South Bass Island, Put-in-Bay Township. The CSPOs were set to expire on May 3, 2021.

{¶ 6} In June 2017, an Ottawa County grand jury indicted Blumensaadt on 12 felony counts and one misdemeanor. Blumensaadt was arrested and incarcerated during the pendency of the case. At his disciplinary hearing, Winters testified that he had disclosed his prior relationship with Blumensaadt to the prosecutor and defense counsel and that both of them agreed that he could preside over Blumensaadt's criminal case.

{¶ 7} On June 28, 2019, Winters approved a plea agreement in which Blumensaadt pleaded guilty to two felonies and one misdemeanor. Winters sentenced Blumensaadt to time served for the felony counts and a 180-day jail term for the misdemeanor count, which was suspended on the condition that Blumensaadt not enter Put-in-Bay for one year. Blumensaadt and the prosecutor agreed to the sentences, and Blumensaadt was released from custody.

{¶ 8} Within 30 days of Blumensaadt's release, he and Winters became Facebook "friends." They regularly communicated with each other from July 22 through December 19, 2019, using the Facebook Messenger application.[1] In addition to exchanging messages, Winters and Blumensaadt had several audio conversations through the application in which they discussed personal and professional matters—including multiple cases over which Winters presided.

---

1. The Facebook Messenger application allows users to exchange instant private messages, photos, and audio and video recordings and to engage in real-time audio and video conversations. *See* Google Play, *Messenger–Text and Video Chat for Free*, https://play.google.com/store/apps/details?id=com.facebook.orca&hl=en_US&gl=US (accessed July 20, 2021) [https://perma.cc/4B8N-FU4Y]; *see also* Apple Store, *Messenger*, https://apps.apple.com/us/app/messenger/id454638411 (accessed July 20, 2021) [https://perma.cc/6GTE-GL99].

*B. Winters's Ex Parte Communications*

{¶ 9} On August 21, 2019, an Ottawa County grand jury indicted A.M. on charges of possession of cocaine and tampering with evidence. The day before A.M.'s arraignment, Blumensaadt sent Winters a Facebook message stating that A.M. had sold heroin to his daughter and requesting that Winters not give A.M. a "bond he can make." At the arraignment, Winters released A.M. on a recognizance bond. The following month, Blumensaadt sent Winters a message stating, "I see [A.M.] moved in are [sic] neighborhood on 14th street, I can't wait to get out of here."

{¶ 10} Winters subsequently presided over A.M.'s trial. A jury found A.M. guilty of tampering with evidence and in February 2020, Winters sentenced him to 24 months in prison with credit for time served. Winters never disclosed to the parties that he had received ex parte communications from Blumensaadt regarding A.M.'s case.

{¶ 11} The parties stipulated and the board found that Winters's conduct violated Jud.Cond.R. 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety and the appearance of impropriety), 2.9(A) (prohibiting a judge from initiating, receiving, permitting, or considering ex parte communications except in certain circumstances), and 2.9(B) (requiring a judge who receives an unauthorized ex parte communication bearing upon the substance of a matter to promptly notify the parties of the substance of the communication and to provide the parties with an opportunity to respond).

{¶ 12} The parties also stipulated and the board found that Winters violated those same rules by engaging in ex parte communications with Blumensaadt regarding several other cases over which Winters presided without disclosing those communications to the parties.

*C. Winters's Failure to Disqualify Himself*

{¶ 13} The parties also stipulated and the board found that Winters had failed to disqualify himself from several cases in which his ex parte communications might reasonably have drawn his impartiality into question, resulting in three violations of Jud.Cond.R. 2.11(A) (requiring a judge to disqualify himself in any proceeding in which the judge's impartiality might reasonably be questioned). The conduct giving rise to the Jud.Cond.R. 2.11(A) violations is discussed below.

**1. Blumensaadt's Custody Case**

{¶ 14} Blumensaadt's wife, Michelle, filed a complaint for divorce in July 2018. Winters referred the case to his magistrate, and his only involvement in the proceeding was signing the final judgment entry in May 2019 granting custody of the Blumensaadts' minor son to Michelle.

{¶ 15} In August 2019, Blumensaadt sent Winters a Facebook message informing him that Michelle had agreed to transfer custody of their son to Blumensaadt but that neither of them could afford an attorney. He asked Winters if there was a form that they could use to achieve the custody transfer. Winters directed Blumensaadt to a form on this court's website and informed him that it would cost approximately $1,000 to retain counsel to handle the matter.

{¶ 16} On September 6, 2019, Blumensaadt filed a pro se motion for change of parenting time. Throughout the month, Blumensaadt sent Winters several messages with information pertinent to his pending motion. Winters occasionally responded, with comments like "Interesting!" and "That's sad." On one occasion, Blumensaadt invited Winters and his family to a private dinner that was being hosted by his brother, Bill. Winters initially responded, "I don't know what my schedule is tomorrow [but] I'll be in touch." He later declined the invitation stating, "I guess I really shouldn't since you have a case pending in my

court.  Thanks for asking.  Let['s] get this done . . . Before your personal injury case gets filed😊.”

{¶ 17} Blumensaadt continued to send Winters messages, claiming that his son was afraid of visiting Michelle and speculating that she did not want to go to court because “she's lied about everything.”  He also informed Winters that Michelle had retained an attorney and that they would soon be filing an agreement in court.  Winters responded, “Glad you have it worked out.  Sorry, I've been very busy with a trial.”  That same day, Michelle's attorney filed a proposed consent agreement regarding the transfer of custody from Michelle to Blumensaadt.

{¶ 18} On September 30, 2019, Winters signed an order designating Blumensaadt as the residential parent and legal custodian for his son and establishing a parenting schedule for Michelle.  Blumensaadt sent Winters a message stating that he had received the order and Winters replied, “Good deal!”

## 2. Modification of CSPOs to Permit Blumensaadt to Attend His Mother's Funeral

{¶ 19} On September 14, 2019, Blumensaadt sent Winters a message stating that Blumensaadt's mother had a terminal illness and had less than one year to live.  Through the end of November, they exchanged personal messages every few days about Put-in-Bay residents, politics, or events, along with a few messages regarding the declining health of Blumensaadt's mother and Blumensaadt's strained relationship with Todd Sr. and Todd Jr.—the brother and nephew who had obtained CSPOs against him.

{¶ 20} On November 30, 2019, Blumensaadt sent Winters a message stating, “Hey I have a question about my mom, when she passes and that protective order, call me when you get a chance please!”  Within an hour, Winters initiated an audio conversation with Blumensaadt through Facebook Messenger and instructed him to file a motion asking the court to temporarily modify the CSPOs to allow him to attend his mother's funeral where Todd Sr., Todd Jr., and

other protected persons named in the CSPOs would be present. A few days later, they spoke for 30 minutes through Facebook Messenger about potential modifications to the CSPOs.

{¶ 21} On December 10, Blumensaadt sent a message to Winters stating that his attorney had filed a motion and asking Winters to "get [an] order together ASAP." Blumensaadt's attorney had also filed a motion in Blumensaadt's criminal case seeking permission for Blumensaadt to travel to South Bass Island for his mother's funeral; the state did not object.

{¶ 22} On December 17, Todd Sr. and Todd Jr. each filed objections to Blumensaadt's motion to modify the CSPOs. Blumensaadt sent a message to Winters that same day stating, "Todd doesn't want me there, now what[?]" Winters did not respond. In another message sent later that day, Blumensaadt accused his brother of using the protection order as a weapon. Winters responded, stating that the magistrate would have a hearing. At Blumensaadt's request, Winters initiated an audio conversation through Facebook Messenger later that night; they discussed Todd Sr.'s personal objections to Blumensaadt's attendance at his mother's funeral, but they did not discuss the legal objections filed by Todd Sr. and Todd Jr. regarding Blumensaadt's request for modification of the CSPOs.

{¶ 23} On December 18, Blumensaadt followed up with a message reminding Winters that the CSPOs allowed him to attend his son's school functions, even if the protected persons were present. He sent another message to Winters later that day asking if there was any word about the arrangements, and Winters responded, "A deputy will accompany you. No need for consent, no need for a hearing and the Sheriff is onboard [sic]." Two days later, Winters granted Blumensaadt's motion to modify the CSPOs without conducting a hearing on the objections of Todd Sr. and Todd Jr. He also granted the motion to travel that had

been filed in Blumensaadt's criminal case. Both orders incorporated the travel schedule that Blumensaadt had conveyed to Winters in a Facebook message.

### 3. Criminal Case Related to Blumensaadt's Personal-Injury Claim

{¶ 24} On July 27, 2019, Blumensaadt was injured when his motorcycle was struck from behind by a vehicle driven by D.F. On September 9, 2019, a bill of information was filed in the Ottawa County Court of Common Pleas charging D.F. with two misdemeanor counts of operating a vehicle under the influence ("OVI"), one misdemeanor count of failing to maintain space between moving vehicles, and two felony counts of aggravated vehicular assault. Winters presided over the case.

{¶ 25} From September 9, 2019, through January 25, 2020, Blumensaadt and Winters exchanged messages regarding Blumensaadt's injuries and D.F.'s criminal case. On October 11, 2019, the state and D.F. jointly requested that D.F. be accepted into a pretrial diversion program. A few days later, Blumensaadt sent Winters the following message:

> Then this guy who hit me wants to plead no contest to ovi felony, not a chance, he doesn't want to admit guilt so he can get out of liability, over my dead body, [the prosecutor] should no better, I'm waiting to hear what him and [my attorney] have figured out on that yet, he blows twice over legal limit and admitted to drinking, I don't think he has a chance at jury trial, he's been offered 1 ovi felony and 1 unasheered clear distance misdemeanor and diversion program, he should be happy with no jail time, but no, he wants his cake and eat it to.

(Misspellings sic.)

8

{¶ 26} On November 14, 2019, Blumensaadt sent the following message to Winters: "Doctor says I more than likely won't be able to work again because of accident, back and legs go numb and give out after 10 to 15 minutes of standing because of crushed disk. Nice[.] Can anything else go wrong[?]"

{¶ 27} In December 2019, Winters granted the motion to place D.F. in a diversion program. Before D.F.'s plea-change-and-diversion hearing, Blumensaadt sent Winters a message stating that he understood that Winters was in a difficult position as a judge in a small county, that he respected Winters, and that he hoped the case would not change their relationship.

### D. Court Adopts Board's Findings of Misconduct

{¶ 28} Based on the conduct described above, we find that Winters (1) engaged in inappropriate ex parte communications with Blumensaadt regarding the substance of multiple cases that were pending before him and (2) failed to promptly notify the parties of those communications and give them an opportunity to respond. We further find that Winters's conduct failed to promote public confidence in the independence, integrity, and impartiality of the judiciary and created an appearance of impropriety. We therefore adopt the board's findings that Winters violated Jud.Cond.R. 1.2, 2.9(A), and 2.9(B) by his ex parte communications on four counts: (1) the matter involving A.M., (2) the custody transfer, (3) the modification of the CSPOs, and (4) the matter involving D.F.

{¶ 29} We also agree with the Board's finding that Winters's unauthorized ex parte communications with Blumensaadt could reasonably call his impartiality into question with respect to each of the cases in which Blumensaadt was a party and the criminal case related to Blumensaadt's personal-injury claim. We therefore adopt the board's findings that Winters committed three violations of Jud.Cond.R. 2.11(A) by failing to disqualify himself from those proceedings.

{¶ 30} In addition, we note that Winters stipulated that his conduct in modifying the CSPOs to permit Blumensaadt to attend his mother's funeral

violated Jud.Cond.R. 2.2 (requiring a judge to uphold and apply the law and to perform all duties of judicial office fairly and impartially). However, neither the panel nor the board addressed that stipulation. We find that Winters's decision to modify the CSPOs without disclosing his ex parte communications and without conducting a hearing on the objections of the protected persons was unfair to Todd Sr. and Todd Jr. and could reasonably call into question Winters's impartiality—even though he appears to have reached the correct result in those matters. We therefore find that Winters's conduct violated Jud.Cond.R. 2.2, as stipulated by the parties.

## II. SANCTION

{¶ 31} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 32} As for aggravating factors, the parties stipulated and the board found that Winters had engaged in a pattern of misconduct that involved multiple offenses. *See* Gov.Bar R. V(13)(B)(3) and (4). As for mitigating factors, the parties stipulated that Winters has no prior discipline, acted without a dishonest or selfish motive, made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, and submitted evidence of his good character and reputation in the community. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (5). In addition to adopting those factors, the board found that Winters had expressed genuine remorse for his misconduct and that he had terminated his social-media accounts.

{¶ 33} The parties jointly recommended that Winters be suspended from the practice of law for six months, stayed in its entirety on the conditions that he (1) complete at least three hours of judicial-ethics education focused on ex parte

communication or the use of social media by judicial officers, in addition to the requirements of Gov.Jud.R. IV and (2) engage in no further misconduct.

{¶ 34} In determining the appropriate sanction for Winters's misconduct, the board considered numerous cases with sanctions ranging from a public reprimand to permanent disbarment. *See, e.g.*, *Disciplinary Counsel v. Stuard*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788 (publicly reprimanding a judge who engaged in a series of ex parte communications with an assistant prosecutor whom he had asked to draft a sentencing order in a capital case); *Disciplinary Counsel v. Medley*, 93 Ohio St.3d 474, 756 N.E.2d 104 (2001) (publicly reprimanding a judge who drove a defendant home after her arrest, then failed to recuse himself from presiding over the defendant's criminal case); *Disciplinary Counsel v. Terry*, 147 Ohio St.3d 169, 2016-Ohio-563, 63 N.E.3d 88 (permanently disbarring a judge who was convicted in federal court of one count of conspiracy to commit mail fraud and two counts of honest-services mail fraud for providing judicial favors in exchange for contributions to his election campaign).

{¶ 35} Between the two extremes of public reprimand and permanent disbarment, the board considered *Disciplinary Counsel v. Porzio*, 160 Ohio St.3d 77, 2020-Ohio-1569, 153 N.E.3d 70. In *Porzio*, we imposed a conditionally stayed six-month suspension on a magistrate who, like Winters, had engaged in ex parte communications that gave the appearance of bias against one of the parties to litigation over which she had presided. Porzio's communication consisted of a single conversation with one of the parties and that party's witnesses at the conclusion of a hearing on a petition and counterpetition for a civil stalking protection order. Both parties appeared pro se, and Porzio asked the parties to leave the courthouse separately at the conclusion of the hearing. After the first party left the courtroom, Porzio commented to the remaining party and his witnesses that neither party had proved his case and that the other party was "such

a liar," "made himself look like a fool," was "clueless," and acted "like he's 10 years old." *Id.* at ¶ 7. A few months after making those statements, Porzio issued a decision granting a civil protection order to the party with whom she had engaged in the ex parte communication and denying the counterpetition of the other party. There were no aggravating factors, and significant mitigating factors were present. Porzio had a clean disciplinary record in her more than 40 years of practice, lacked a dishonest or selfish motive, exhibited a cooperative attitude toward the disciplinary proceedings, lost her job as a result of her misconduct, and presented significant evidence of her competence, integrity, and professionalism as a magistrate.

{¶ 36} The board also noted that in *Disciplinary Counsel v. Elum*, 148 Ohio St.3d 606, 2016-Ohio-8256, 71 N.E.3d 1085, we disciplined a judge who injected himself into and attempted to resolve a landlord-tenant dispute that was not on his docket. Like Winters, Elum lacked a dishonest or selfish motive, cooperated with the disciplinary process, and submitted significant character and reputation evidence. At his disciplinary hearing, Elum acknowledged that he let his heart get in the way and admitted that he was not a proper person to mediate the dispute. Acknowledging that Elum had previously been disciplined for injecting himself into an internal police-department investigation, we imposed a conditionally stayed one-year suspension for his second offense.

{¶ 37} In contrast to Porzio and Elum, both of whom engaged in isolated incidents of misconduct, Winters engaged in inappropriate ex parte communications and failed to disqualify himself from several cases in which his impartiality could reasonably be questioned. However, the record does not suggest that Winters's misconduct led him to reach any improper or biased outcome. While the board acknowledged that Winters's decision to allow Blumensaadt to attend his mother's funeral with a sheriff's escort appeared to be the correct result, it appropriately admonished him that "all litigants are entitled to

have their disputes heard by a judicial officer [who] is free of any possible bias and [who] is not engaged in back-channel discussions with one of the parties about the very topic that is being decided."

{¶ 38} Recognizing that Winters accepted responsibility for his misconduct, fully cooperated in relator's investigation, and had taken steps to remediate his conduct by terminating his social-media accounts, the board recommended that he be suspended from the practice of law in Ohio for six months with the entire suspension stayed on the conditions that he (1) complete at least three hours of continuing judicial education on the subject of ex parte communications or appropriate use of social media by judicial officers, (2) refrain from committing further misconduct, and (3) pay the costs of these proceedings.

{¶ 39} After reviewing the record in this case and the sanctions that we have imposed for comparable misconduct, we agree that a conditionally stayed six-month suspension is appropriate.

## III. CONCLUSION

{¶ 40} Accordingly, Bruce Alan Winters is suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the conditions that he (1) complete a minimum of three hours of continuing judicial education approved by relator on the subject of ex parte communications or appropriate use of social media by judicial officers, in addition to the requirements of Gov.Jud.R. IV, (2) refrain from further misconduct, and (3) pay the costs of these proceedings. If Winters fails to comply with any condition of the stay, the stay will be lifted and he will serve the entire six-month suspension. Costs are taxed to Winters.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

—————————

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Charles J. Kettlewell, L.L.C., and Charles J. Kettlewell, for respondent.

_____